## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JANE DOE

     Plaintiff,                                 Hon.

v.                                          Case No.

WEBBERVILLE COMMUNITY SCHOOLS
and JEANNETTE KIERNAN, *in her official
and individual capacity*,

     Defendants.

---

Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48108
(734) 663-7550
fgalguera@nachtlaw.com

---

### COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Jane Doe, by and through undersigned counsel,

NACHTLAW, P.C. and hereby respectfully submits the following:

### PARTIES, VENUE, AND JURISDICTION

1.    Plaintiff Jane Doe[1] is a minor individual residing in Williamston,

Michigan, Ingham County.

---

[1] Plaintiff requests anonymity in this lawsuit due to the impact of Defendants' actions
on her education, career, and livelihood and the potential for further harm if her

1

2.     Defendant Webberville Community Schools (hereinafter referred to as "the District" or "Defendant Webberville" is a public school district pursuant to the Michigan School Code of 1976, M.C.L. 380.1 *et seq.*, is a recipient of federal funding, and is in Webberville, Michigan, Ingham County.

3.     Defendant Jeannette Kiernan is an individual residing in Ingham County, Michigan.

4.     The events giving rise to this lawsuit took place in Webberville, Michigan, Ingham County.

5.     Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2), as Defendants are domiciled in this Court's judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this Court's judicial district.

6.     This action arises from violations of 42 U.S.C. § 1983, Title IX, the Americans with Disabilities Act, Michigan's Persons With Disabilities Civil Rights Act, Michigan's Elliott-Larsen Civil Rights Act, intentional infliction of emotional distress, and gross negligence and as such, this Court has original, federal question jurisdiction pursuant to 28 U.S.C. § 1331 and federal civil rights jurisdiction pursuant to 28 U.S.C. § 1343.

---

identity were to be made public. Defendants will be readily aware of Plaintiff's identity upon review of the allegations in this Complaint. If necessary and requested by this Court, Plaintiff will file the appropriate motion for anonymity.

7.     This Court also has supplemental jurisdiction over all state claims pled herein pursuant to 28 U.S.C. §1367.

## GENERAL ALLEGATIONS

### Background Information about Ms. Doe and the Beginning of the Discrimination

8.     Ms. Doe is a bright, outgoing and curious young woman whose journey through life and academia have been impacted by several life-altering events.

9.     First and foremost, Ms. Doe's life changed in the wake of the COVID-19 pandemic in spring of 2020, at only seven years old.

10.     Ms. Doe, at this point, began to struggle with mental health as a result of the isolation.

11.     During this time, Ms. Doe was homeschooled along with her siblings.

12.     Ms. Doe, already close to her family, found strength in her mother who had taken on the responsibility of her education.

13.     At a young age, Ms. Doe went through yet another significant traumatic event: in late April of 2022, her mother suffered a massive stroke which left her in the hospital *for months* and on the receiving end of multiple brain surgeries.

14.     Ms. Doe's mental health was further impacted; due to strict visitation rules, Ms. Doe was not able to visit her mother.

15.    When she finally saw her mother again, after a few months, Ms. Doe was heartbroken to find she was essentially re-meeting her mother, as the brain damage suffered was far too great.

16.    Ms. Doe's father, now the primary caregiver, made the difficult decision to transition Ms. Doe and her siblings back to public school.

17.    Ms. Doe's mother returned to their home in October 2022.

18.    The stress of so many life changes at such a young age took a heavy toll on Ms. Doe.

19.    Later in the 2022-2023 school year, Ms. Doe's father was notified by the District that their computer system flagged a suicide-related search by Ms. Doe, triggering a response from Community Mental Health of Ingham County.

20.    Ms. Doe was thereafter diagnosed with Attention-Deficit Hyperactivity Disorder (hereinafter referred to as ADHD) and depression, began seeing a therapist, and began taking medications for her conditions.

21.    Defendant Webberville Community Schools (hereinafter referred to as "the District") was made aware of both the traumatic incident and Ms. Doe's diagnosis.

22.    Ms. Doe was not treated the same way by the District anymore.

23.    The District, first and foremost, after 504 paperwork was submitted in 2023 for the 2022-2023 school year noting depression as the primary reason for accommodations, explicitly denied *any* accommodations for depression.

24.    Instead of addressing this concern, the District then began to further ostracize Ms. Doe by painting her as a "problem" kid.

25.    For example, in September of 2023, the District, without giving Ms. Doe's family an iota of evidence, claimed that Ms. Doe inappropriately kissed *her brother*, requiring them to contact *the police and Child Protective Services*.

26.    When Ms. Doe's father challenged the existence of any evidence, the District claimed it could not show him anything due to protecting "other students' rights," which made little sense since the other student's parent was also Ms. Doe's father.

27.    The District's harassment did not lead to any subsequent criminal charges or discipline, matching the complete lack of evidence provided to the family.

28.    Later, on February 29, 2024, Ms. Doe's father was contacted by District staff informing him that Ms. Doe had allegedly shown another student a drawing depicting "a female with male genitalia."

29.    Ms. Doe's father was never shown the alleged picture.

30.    Ms. Doe later explained that she had simply drawn a thin man and referred to him as a "twink," defined by the Cambridge Dictionary online as a "a gay man who is young, slim, and looks like a boy."

31.    This event marked Defendant's odd treatment of Ms. Doe's sexuality for absolutely no legitimate reason.

32.    Later, on April 2, 2024, Ms. Doe was sent home and disciplined for referencing explicit music lyrics from a YouTube video.

33.    Upon reasonable belief, other students engaging in similar behavior have not been disciplined in the same manner.

## Defendants Takes Advantage of a Title IX Complaint to Push Ms. Doe Out of the School District

34.    Defendants continued their discriminatory behavior and further created a hostile educational environment for Ms. Doe by abusing its role during a Title IX investigation.

35.    On November 12, 2024, an incident was reported on the bus, wherein a student, M.B., reported – without substantiation – that Ms. Doe had touched her inappropriately on the bus.

36.    M.B. had previously approached Ms. Doe in a flirtatious and sexually suggestive manner.

37.    On the day of the incident, M.B. encouraged Ms. Doe to touch her in a sexual manner on the bus.

38.    Ms. Doe did not feel comfortable with this request, considering that there were cameras on the bus.

39.    Nonetheless, M.B. placed an extreme amount of pressure on Ms. Doe.

40.    Ms. Doe gave in, engaging in an over-the-clothing contact.

41.    However, M.B. reported Ms. Doe incredulously for non-consensual contact.

42.    Defendant Webberville, without substantiating the just-made allegation, without contacting Ms. Doe's parents, and without contacting her special education team, summarily removed Ms. Does under emergency suspension the very next day when M.B. made the allegations.

43.    At this point, Defendants did not have in its possession any definitive proof of these allegations nor did it even have Ms. Doe's input.

44.    Ms. Doe was put into rooms surrounded by police officers and District staff, without her parents and without the right to speak for herself.

45.    Ms. Doe was then interviewed by Defendant Former Principal Jeanette Kiernan, out of the presence of her parents.

46.    Ms. Doe's parents did not know what was occurring; her father was contacted and told to pick Ms. Doe up.

7

47.     When he arrived, Ms. Doe's father was simply told that Ms. Doe was not to return and was facing an "indefinite suspension."

48.     Defendants had no rational basis for Ms. Doe's removal from her school entirely.

49.     Defendants' next substantive update after simply removing Ms. Doe from her education was a November 19, 2024, letter in which Ms. Doe was referred to as an "imminent threat" with no supporting documentation, no threat assessment, and no formal investigation into the veracity of the allegations brought forth by M.B.

50.     It is not until November 22, 2024, that a 504/Manifestation Determination Review meeting occurred.

51.     Defendant Kiernan, serving as both the 504 and Title IX Coordinator, actively ignored the full scope of Ms. Doe's disabilities, choosing only to focus on ADHD despite medical documentation as to her emotional disabilities, and found that there was no manifestation.

52.     It is unclear how Defendant Kiernan made that finding.

53.     Notably, push back provided by Ms. Doe's father that their failure to properly document her mental health diagnosis in the 504 was affecting the decision being made went unanswered.

54.    Defendant Kiernan did admit during that meeting that there was a lack of evidence in this matter, with no witnesses able to corroborate M.B.'s false accusations.

55.    The Title IX investigation, and report, consisted of only M.B.'s interview statement and Ms. Doe's.

56.    There was a summary provided of what the video showed.

57.    There is no obvious reason why the video from the bus, which shows only the contact described by Ms. Doe and no emotional distress by M.B., was not included as relevant evidence.

58.    The video clearly failed to corroborate M.B.'s narrative.

59.    The video clearly supported Ms. Doe's recollection of the incident.

60.    Ms. Doe's family requested that the cameras be reviewed leading up to the alleged day of the incident in order to further corroborate Ms. Doe's comments about M.B's conduct, but, upon reasonable belief, the District did  not review.

61.    Nonetheless, with zero credibility assessment or supporting evidence contained in the report, Defendants found Ms. Doe responsible for a Title IX violation on December 14, 2024.

62.    This decision was appealed and summarily denied by Defendants on February 10th, 2025.

63.    The decision failed to grapple with the concerning procedural irregularities and factual issues flagged in the appeal itself, including but not limited to:

- Failure to provide proper notification;

- Failure to conduct credibility assessments;

- Failure to provide all evidence considered;

- Improper emergency removal; and

- Conflict of interest and/or bias.

64.    It was based on this wholly deficient process, created by Defendants, that Defendant's Webberville's Board moved to permanently expel Ms. Doe.

65.    Despite Board members acknowledging that this matter was a "she said-she said" scenario and *noting that exculpatory evidence had been obscured throughout the process*, the Board voted to dismiss Ms. Doe.

66.    As a result of Defendants' actions, Ms. Doe was not only deprived of a fair education at the District, but actually *continues* to be deprived of a fair education.

67.    Defendants' actions have made it nearly impossible for Ms. Doe to continue her education.

68.    Ms. Doe applied to several public schools and not *one* accepted her.

69.    Ms. Doe, to this day, must be *homeschooled* by her older sibling because not even online programs would accept her.

10

70.    Ms. Doe was discriminated and retaliated against because she was disabled and perceived as having an alternative sexual orientation.

71.    But for her disabilities, Ms. Doe would not have been treated differently by the District in how it viewed Ms. Doe's behavior.

72.    But for Ms. Doe's exercise of her rights as a disabled student, the District would not have retaliated by depriving her of her rights as a student going through a disciplinary/Title IX process.

73.    But for the District's perception of Ms. Doe's sexuality, Ms. Doe would not have been written up as much and, ultimately, would not have had her evidence ignored throughout the Title IX investigation and process.

## COUNT I

## <u>VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, 42 U.S.C. § 1983</u>
*(Against Defendant Kiernan for money damages in their personal capacities and declaratory and injunctive relief in their official capacities)*

74.    Plaintiff incorporates the preceding allegations as if fully restated herein.

75.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall… deny to any person within its jurisdiction the equal protection of the laws."

76.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

77.    Defendants acted under color of law when they engaged in the conduct described herein, including, but not limited to, discriminating against Plaintiff based on her disability and/or gender/sexual orientation by arbitrarily and capriciously denying her the ability and opportunity to engage in the Title IX process, and ultimately dismissing her from the District without adequate process.

78.    Defendants thereby violated Plaintiff's clearly established constitutional rights, of which any reasonable person in their position would have known; they are therefore not entitled to qualified immunity.

79.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of education; loss of income; loss of career opportunities and earning capacity; mental and emotional distress and the physical consequences thereof; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II

### SEX DISCRIMINATION IN VIOLATION OF
### TITLE IX, 20 U.S.C. § 1681 *et. seq*.
*(Against Defendant Webberville)*

80.    Plaintiff incorporates the preceding allegations as if fully restated herein.

81.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

82.    Defendant Webberville is a public education institution receiving Federal financial assistance.

83.    Defendants discriminated against Plaintiff based on her gender/sexual orientation by arbitrarily and capriciously denying her the ability and opportunity to engage in the Title IX process and ultimately finding her responsible without adequate process and contrary to the evidence provided.

84.    Bias on the basis of sex was a motivating factor behind Defendant Webberville's decision to find against and ultimately remove Plaintiff.

85.    Defendant Webberville applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing her serious and unjustified damage.

13

86.     Based on the foregoing, Plaintiff was subjected to biased, prejudiced and unfair treatment in violation of Title IX.

87.     As alleged in the above paragraphs and incorporated herein, Plaintiff did not receive the due process and equal protection required by Title IX.

88.     Defendants' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling her to punitive damages.

89.     As a direct and proximate result of Defendant Webberville's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT III

### DISABILITY DISCRIMINATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 29 U.S.C. § 12131, et seq.
*(Against Defendant Webberville)*

90.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

91.     Plaintiff is an individual with multiple disabilities, including ADHD and depression.

92.     These conditions substantially limit Plaintiff's major life activities and are "qualified disabilities" under the relevant laws.

93.    The ADA was passed as a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.

94.    Title II of the ADA prohibits discrimination against qualified persons with disabilities in the provision of public services, programs, and activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

95.    It is well established that Title II of the ADA allows disabled individuals to sue public school districts that exclude them from participation in, deny them benefits of, or otherwise discriminate against them in a program because of their disability. *Gohl v. Livonia Pub. Sch. Sch. Dist.,* 836 F.3d 672, 681 (6th Cir. 2016), citing *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

96.    Persons with disabilities are "qualified" if, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," they meet the essential requirements for the services, programs, or activities.

97.    Congress stated in the ADA that Eleventh Amendment immunity would not apply to suits brought under the ADA. 42 U.S.C. 12202.

98.    Defendant discriminated against Plaintiff due to her disability by improperly dismissing her, thereby failing to give her an education, and failing to give her proper services.

99.    Defendant Webberville Community Schools did so because of Plaintiff's disability.

100.   Plaintiff has suffered injury as a direct result of being disallowed from effectively participating in school due to the defendant's unlawful discrimination in violation of the ADA.

## COUNT IV

### RETALIATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 29 U.S.C. § 12131, et seq.
*(Against Defendant Webberville)*

101.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

102.   Plaintiff is an individual with multiple disabilities, including ADHD and depression.

103.   Plaintiff engaged in a protected activity under the ADA by requesting that Defendant provide her special services that aligned with her disability and reporting dissatisfaction with Defendant's lack of action.

104.   Because Plaintiff engaged in a protected activity, Defendant retaliated against Plaintiff by, including but not limited to summarily removing her under emergency suspension and expelling her.

105.   As a direct and proximate result of Defendant' retaliation, Plaintiff has suffered emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT V

## DISABILITY DISCRIMINATION IN VIOLATION OF MICHIGAN'S PWDCRA, M.C.L. § 37.1101, *et seq.*

*(Against Defendant Webberville)*

106.   Plaintiff incorporates the preceding allegations as if fully set forth herein.

107.   Michigan courts view federal civil rights law as persuasive authority in interpreting Michigan civil rights law. *Harrison v. Olde Financial,* 225 Mich App 601, 606 (1997).

108.   The Michigan Court of Appeals and the Michigan Supreme Court have noted that the ADA and the PWDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PWDCRA. *Chiles v. Mach Shop, Inc.*, 238 Mich App 462, 472; 606 N.W.2d 398, 405 (Mich. Ct. App. 1999). *Eagle v. Hurley Med. Ctr.,* Case No. 12-13704, 20 (E.D. Mich. Jun. 27, 2013).

17

109.    Defendant Webberville is an education institution as defined by the Act.

110.    Defendant discriminated against Plaintiff due to her disability by improperly dismissing her, thereby failing to give her an education, and failing to give her proper services.

111.    Defendant Webberville Community Schools did so because of Plaintiff's disability.

112.    Plaintiff has suffered injury as a direct result of being disallowed from participating in school due to Defendant' unlawful discrimination manifested through their exclusion and expulsion of Plaintiff because of her disability, in violation of the PWDCRA.

## COUNT VI

### RETALIATION IN VIOLATION OF MICHIGAN'S PWDCRA
### M.C.L. § 37.1101, *et seq.*
*(Against Defendant Webberville)*

113.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein. Plaintiff is an individual with multiple disabilities, including ADHD and depression.

114.    Plaintiff engaged in a protected activity under the PWDCRA by requesting that Defendant provide her with special services that aligned with her disability and reporting dissatisfaction with Defendant's lack of action.

115.    Because Plaintiff engaged in a protected activity, Defendant retaliated against Plaintiff by, including but not limited to summarily removing her under emergency suspension and expelling her.

116.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT VII

### GENDER/SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
*(As to Defendant Webberville)*

117.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

118.    *Rouch World, LLC v. Dep't of Civil Rights*, 510 Mich. 398, 987 N.W.2d 501, (2022) recognized that ELCRA sex discrimination also encompasses discrimination on the basis of sexual orientation.

119.    Defendant perceived Ms. Doe as having an alternative sexual orientation to being "straight."

120.    As a result of this perception, Defendant discriminated against Ms. Doe.

121.    Ms. Doe's behavior was perceived as sexual because Defendant believed that Ms. Doe was a lesbian or otherwise on the spectrum of sexual orientation and punished her for that.

19

122.   Defendant further used this perception to inappropriately discount Ms. Doe's evidence of innocence throughout the investigation into her.

123.   Defendant would have not treated Ms. Doe as discussed herein if it did not perceive her as having an "alternative" sexual orientation.

124.   As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(As to Defendant Kiernan)*

125.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

126.   Defendant Kiernan's conduct, described above, was so outrageous in character, and so extreme in degree, as to go above all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

127.   Defendant Kiernan's conduct amounted to intentional infliction of emotional distress and caused damages to Plaintiff as described herein.

## COUNT IX
## GROSS NEGLIGENCE
### *(As to Defendant Kiernan)*

128.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

129.   The individual Defendants' conduct, described above, was "so reckless as to demonstrate a substantial lack of concern for whether an injury results", constituting gross negligence under Michigan law. MCL 691.1407(8)(a).

130.   Defendants are therefore not entitled to governmental immunity.

131.   The individual Defendants' conduct, described above, was a direct and proximate cause of injury to Plaintiff described herein

## RELIEF REQUESTED

WHEREOF, Plaintiff respectfully requests that this Court:

a.  Find that Defendant discriminated and retaliated against Plaintiff in violation of the ADA, Michigan's ELCRA and Michigan's PWDCRA;

b.  Order Defendants to expunge Plaintiff's disciplinary record;

c.  Award Plaintiff compensatory damages, including damages for mental anguish, pain and suffering, and humiliation;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff reasonable attorneys' fees and costs; and

f.  Award Plaintiff such other relief as this Court deems necessary and proper.

Respectfully submitted,

NACHTLAW, P.C.

*/s/ Fabiola A. Galguera*
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff

501 Avis Drive, Suite 3
Ann Arbor, Michigan 48104
Fgalguera@nachtlaw.com

Dated: February 3, 2026

## DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff Jane Doe by and through her attorneys, NACHTLAW P.C. and hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

NACHTLAW, P.C.

*/s/ Fabiola A. Galguera*
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48104
Fgalguera@nachtlaw.com

Dated: February 3, 2026